STATE OF TENNESSEE *v.* WHITWORTH, Trustee, etc.

*(Circuit Court, M. D. Tennessee. 1884.)*

TAXATION—NASHVILLE & DECATUR RAILROAD COMPANY—EXEMPTION OF SHARE-HOLDERS—OBLIGATION OF CONTRACT.

The sixth section of the act passed by the legislature of Tennessee, April 19, 1866, declaring that the Nashville & Decatur Railroad Company "shall, for its government, be entitled to all the rights and privileges, and subject to all the restrictions and liabilities, conferred and imposed upon the Nashville & Chattanooga Railroad Company," confers upon the former company the privilege of exemption from taxation, as to its capital stock and property, enjoyed by the latter company, under the provisions of its charter, and the act of March 1, 1869, taxing the shares of stock owned by individual shareholders in the Nashville & Decatur Railroad Company, impairs the obligation of contract and is void. *State of Tennessee* v. *Whitworth, ante,* 75, followed.

*Mandamus.*

MATTHEWS, Justice. This is also a petition for a *mandamus* filed in the circuit court of Davidson county, and removed into this court on petition of the defendant, on the ground that its decision necessarily involves a question arising under the constitution of the United States. All the questions in it are disposed of by the judgment in the previous case [*ante,* 75] as to the exemption claimed on behalf of the stockholders in the Nashville, Chattanooga & St. Louis Railroad Company, except one. That one is whether the stockholders in the Nashville & Decatur Railroad Company are entitled, under the charter of that company, to a like exemption.

On January 23, 1852, the general assembly of Tennessee incorporated the Tennessee & Alabama Railroad Company for the purpose

of constructing a railroad from Nashville, through Franklin, to the
state line between Tennessee and Alabama, in the direction of Flor-
ence, Alabama, and provided that "said company shall have all the
rights, powers, and privileges, and be subject to all the liabilities
and restrictions, conferred and imposed upon the charter of the Nash-
ville & Chattanooga Railroad Company, and all the various amend-
ments" thereto.   On November 30, 1853, the general assembly of
Tennessee incorporated the Central Southern Railroad Company for
the purpose of building a railroad from the Tennessee & Alabama
Railroad, at Columbia, to the Alabama line, in the direction of Athens
and Decatur, in Alabama.   This act contains the same reference to
the charter of the Nashville & Chattanooga Railroad Company as
that contained in the act incorporating the Tennessèe & Alabamà
Railroad Company, just quoted.   On December 19, 1853, the legisla-
ture of Alabama incorporated the Tennessee & Alabama Central Rail-
road Company, for the purpose of constructing a railroad from Monte-
vallo, through Decatur and Athens, Alabama, to the state line of Ten-
nessee, to connect with a railroad leading to Columbia, Tennessee,
and with authority to consolidate with such company connecting with
its road at the state line.   This consolidation was authorized and ef-
fected under an act of the legislature of Tennessee, passed April 19,
1866; the consolidated company to be called the Nashville & Decatur
Railroad Company.   The sixth section of the act is as follows:

"That the said Nashville & Decatur Railroad shall, for its government, be
entitled to all the rights and privileges, and subject to all the restrictions and
liabilities, conferred and imposed upon the Nashville & Chattanooga Railroad
Company: provided that no state aid is intended to be extended to said Nash-
ville & Decatur Railroad; provided, further, that no new liability is intended
to be imposed hereby upon said Tennessee & Alabama Railroad Company
and the Central Southern Railroad Company."

Under this act the consolidation was consummated by a surrender
of all the original stock in the constituent companies, and the issue
to the holders of equal amounts of stock in the new company; and
the consolidation was ratified by an additional act of legislature.
The question is whether the sixth section of the act of April 19, 1866,
which is the charter of the consolidated company, has conferred upon
the Nashville & Decatur Railroad Company, among the rights and
privileges to which it is entitled for its government, the perpetual
exemption of its capital stock from taxation, which was secured in
the charter of the Nashville & Chattanooga Railroad Company to its
capital stock.

It is claimed for the state, in the first place, that the word "privi-
leges," used in this section, does not include the immunity from tax-
ation possessed by the Nashville & Chattanooga Railroad Company;
the term not having a meaning sufficiently broad to effect that ob-
ject.   But the contrary interpretation of that word, in the same con-
nection as that now considered, has prevailed in a series of deliber-

ate and careful judgments of the supreme court of the United States. *Phil. & W. R. Co.* v. *Maryland,* 10 How. 376; *Tomlinson* v. *Branch,* 15 Wall. 460; *Chesapeake & O. R. Co.* v. *Virginia,* 94 U. S. 718; *Southwestern R. Co.* v. *Georgia,* 92 U. S. 676; *Central R. R. & Banking Co.* v. *Georgia,* 92 U. S. 665; *Humphrey* v. *Pegues,* 16 Wall. 244; *Railroad Co.* v. *Georgia,* 98 U. S. 360. There is nothing inconsistent with this view in the cases of *Morgan* v. *Louisiana,* 93 U. S. 217; *Railroad Cos.* v. *Gaines,* 97 U. S. 711; *Wilson* v. *Gaines,* 103 U. S. 417; *Railroad Co.* v. *Commissioner,* 103 U. S. 4; *Louisville & N. R. Co.* v. *Palmes,* 109 U. S. 252; S. C. 3 Sup. Ct. Rep. 193.

In the case of *Morgan* v. *Louisiana,* 93 U. S. 217, the point decided was that immunity from taxation did not pass by the sale of the franchises of one company to another, because the latter only included such rights and privileges as were necessary to the operation of the company. In the other cases, particularly *Railroad Cos.* v. *Gaines,* 97 U. S. 697, and *Railroad Co.* v. *Commissioners,* 103 U. S. 4, it was held that the grant to one company of the rights and privileges of another for the purpose of making and using a railroad, carried with it, not all the rights and privileges of the former, but only such as were necessary to accomplish the purpose to which the grant was limited,—that of making and using a railroad.

It is sought to bring the present case within the application of this principle of limitation, by force of the words in the sixth section of the act of 1866, which declare that the Nashville & Decatur Railroad Company "shall, for its government, be entitled to all the rights and privileges, and subject to all the restrictions and liabilities, conferred and imposed upon the Nashville & Chattanooga Railroad Company." It is argued that this limits the grant to such rights and privileges only as are necessary for the government of the corporation, and that this excludes the privilege of being exempt from taxation as to its capital stock and property. But the words "for its government" are not words of limitation. The government of the corporation embraces every part of the conduct and business of the company, in all its relations to the state, to the general public, to individuals, to its own stockholders. The language of the sixth section is precisely equivalent to a declaration that the Nashville & Decatur Railroad Company shall be governed by the charter of the Nashville & Chattanooga Railroad Company, as though it had been re-enacted as such, with the name of the former inserted instead of the latter, repeating in detail the language of each section, granting rights and privileges, and imposing restrictions and liabilities. The charter of the corporation is the law of its government, which consists in the regulation of its business in all its relations, and necessarily includes its rights, privileges, and obligations in respect to the state.

It may be said that the exemption from taxation of the shares of capital stock held as property by individual stockholders is not a corporate interest or privilege. But the charter, as was said in the pre-

vious case, is a contract with the individual corporators; and the exemption from taxation of its capital stock must be presumed to have been one of the important if not essential conditions and inducements to the formation of the corporation. The general interest of all the stockholders in the corporate property and business must be regarded as a corporate interest; and the privilege secured to the stockholder to be exempt from taxation on his shares in the capital stock, is also a privilege of the company, inasmuch as it is thus enabled to obtain more readily subscribers to its stock, and thus more certainly to insure the success of the corporation.

The supreme court of Tennessee, in the case of *Wilson* v. *Gaines*, 9 Baxt. 546, have taken a different view from that announced in this opinion, and decided that the word "privilege" would not carry with it such an immunity from taxation; but the grounds of that decision do not seem to be sufficiently strong to outweigh the opposing judgments of the supreme court of the United States, referred to above, and which, in a question of this nature, this court is bound to follow. It results from these views that judgment must be entered for the defendant, dismissing the petition.